# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

| | |
|---|---|
| _____ ) | |
| In re: ) | |
| ) | Chapter 7 |
| MELANIE CARA ERESIAN, ) | Case No. 10-44853-HJB |
| ) | |
| Debtor ) | |
| ) | |
| _____ ) | |
| ) | |
| MELANIE CARA ERESIAN, ) | |
| ) | Adversary Proceeding |
| ) | No. 11-04083 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| WEBSTER FIRST FEDERAL CREDIT ) | |
| UNION, DAVID NICKLESS, CHAPTER ) | |
| TRUSTEE, and RICHARD KING, ) | |
| ) | |
| Defendants ) | |
| _____ ) | |

## <u>MEMORANDUM OF DECISION</u>

Before the Court are two motions for sanctions (together, the "Motions for Sanctions") filed against Melanie Cara Eresian, the plaintiff in this adversary proceeding and the debtor in the underlying Chapter 7 bankruptcy case (the "Debtor") – the first, a "Motion for Sanctions" filed by defendant Webster First Federal Credit Union ("Webster"), and the second, the "Trustee's Motion for Sanctions Pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure" filed by defendant David M. Nickless, the Chapter 7 trustee (the "Trustee") in the underlying case.  The Court must here decide

1

(1) whether the Debtor's filing of this adversary proceeding against Webster and the Trustee constitutes a violation of Bankruptcy Rule 9011(b)[1]; and (2) if so, the appropriate sanction.

I.    FACTS AND TRAVEL OF THE CASE

The relevant facts are drawn from the record in this adversary proceeding (the "Adversary Proceeding") and from the dockets in the underlying Chapter 7 bankruptcy case (the "Main Case") and a related Chapter 13 case.  See In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 8 (1st Cir. 1999) (bankruptcy court may take judicial notice of its own dockets).

On September 30, 2010, Webster filed an involuntary Chapter 7 petition against the Debtor.  See Ch. 7 Involuntary Petition, Main Case No. 10-44853, ECF No. 1.  On October 21, 2010, the Debtor, acting *pro se*, filed an answer and objection to the involuntary petition, requesting dismissal on grounds that the petition was deficient pursuant to § 303(b) because it was filed by only one creditor, while the Debtor had a total of more than 12 creditors.  See Debtor's Resp. & Obj., Main Case ECF No. 4.  The Debtor did not, however, attach to her pleading a list of all her creditors and their addresses, as required by Bankruptcy Rule 1003(b).[2]

---

[1] All references to the "Bankruptcy Code" or to Code sections are to the United States Bankruptcy Code unless otherwise specified, see 11 U.S.C. §§ 101 et seq.; all references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

[2] Bankruptcy Rule 1003(b) specifically provides:

> If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. . . .

Given the Debtor's failure to file a list identifying her creditors, Webster requested that the Court order her to do so. See Exp. Mot. to Compel Alleged Debtor to Produce List of Creditors, Oct. 29, 2010, Main Case ECF No. 8. After a hearing held on November 3, 2010, the Court entered the following order:

> THE ALLEGED DEBTOR IS ORDERED TO FILE THE LIST OF CREDITORS ON OR BEFORE 11/12/10. FAILURE TO FILE THE LIST WILL RESULT IN THE ENTRY OF AN ORDER FOR RELIEF.[3]

See Order re: Exp. Mot. to Compel, Nov. 3, 2010, Main Case ECF No. 20. The Debtor filed a list of creditors and their addresses on November 12, 2013. See List of Creditors, Main Case ECF No. 30.

Also on November 3, 2010, the Court scheduled an evidentiary hearing on the involuntary petition for December 8, 2010. Subsequent to the November 3 hearing, however, and in light of the Debtor's reticence to comply with Webster's discovery requests, Webster filed an "Expedited Motion to Set Discovery Scheduling Conference and to Continue Evidentiary Hearing" (the "Discovery Motion"). See Discovery Motion, Nov. 24, 2010, Main Case ECF No. 33. Webster attached to its Discovery Motion an exhibit listing the documents Webster wanted the Debtor to produce ("Exhibit A").

On December 2, 2010, the Court entered an order that, *inter alia*: (1) ordered the

---

Fed. R. Bankr. P. 1003(b).

[3] Section 303(h) provides:

> If the [involuntary] petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case [if the creditor successfully proves one of the conditions stated in subsections (1) or (2)].

11 U.S.C. § 303(h). "Once the order of relief is entered under 11 U.S.C. § 303(h), the involuntary bankruptcy is generally administered in much the same manner as a voluntary case." In re Colon, 474 B.R. 330, 362 (Bankr. D.P.R. 2012).

Debtor to produce the documents described on Exhibit A on or before January 7, 2011; (2) ordered the Debtor to appear for the taking of her deposition on January 11, 2011; and (3) advised the Debtor that failure to comply "may subject [the Debtor] to a finding of civil contempt, the remedies for which may include monetary sanctions and/or entry of an Order for Relief under Chapter 7 of the Bankruptcy Code." Order re: Discovery Motion, Dec. 2, 2010, Main Case ECF No. 36 (the "First Discovery Order"). The First Discovery Order also continued the evidentiary hearing to January 26, 2011.

In furtherance of the First Discovery Order, Webster mailed to the Debtor a "Notice of Taking Deposition," reiterating the Debtor's obligation to produce certain documents and to attend the scheduled deposition. See Debtor's Mot. to Quash, Jan. 3, 2011, Main Case ECF No. 40. The Debtor filed a motion to quash that notice, on grounds that it was "subsumed" by the First Discovery Order and failed to comply with Bankruptcy Rule 7026. See id. That motion was summarily denied on January 5, 2011. See Order on Mot. to Quash, Main Case ECF No. 42.

Two days later, Webster filed an expedited motion seeking an order finding the Debtor in contempt of the First Discovery Order. See Exp. Mot. for Contempt, Jan. 7, 2011, Main Case ECF No. 43 (the "First Contempt Motion"). Through that motion, the Court was made aware for the first time that it had erred in issuing the First Discovery Order, which directed the Debtor to "produce those documents described on Exhibit "A" attached to this Order." First Discovery Order 1 (emphasis supplied). Although the Court had intended to attach Webster's "Exhibit A", no Exhibit A was attached to the First Discovery Order. This error apparently led to out-of-court bickering between the Debtor and Webster, with Webster taking the position that the Court's intention was

4

obviously to incorporate its Exhibit A and the Debtor informing Webster that she had no intention of producing *any* documents. Instead, the Debtor asserted that "there is no court mandated schedule for the production of documents that exists" and that she was "neither able nor duty bound . . . to produce documents." First Contempt Motion, Ex. C.

Neither Webster nor the Debtor apprised the Court of its error or sought clarification of the First Discovery Order prior to the deadline for document production. Accordingly, at the hearing on the First Contempt Motion, the Court set a new deadline by which the Debtor was obligated to produce documents, scheduled a new date for the Debtor's deposition, continued the evidentiary hearing to February 25, 2011, and also took the opportunity to edit Exhibit A to improve the relevancy and clarity of the document requests. See Am. Order, Jan. 11, 2011, Main Case ECF No. 50 (the "Amended Discovery Order"). The Amended Discovery Order was identical to the First Discovery Order, with the exception of the new dates and the addition of the previously missing (and now revised) Exhibit A.

More than a month after the entry of the Amended Discovery Order and only three business days prior to the Court-ordered document production, the Debtor filed a motion seeking clarification of the Amended Discovery Order and asking the Court for a protective order pending its ruling on the motion (the "Motion to Clarify"). See Motion to Clarify, Feb. 16, 2011, Main Case ECF No. 55. In the Motion to Clarify, the Debtor maintained that each of Webster's document requests were "facially overbroad" and so "open-ended that the Alleged Debtor could not possibly fully determine, without undue burden and expense – [sic] which documents would in fact, be responsive." Motion to Clarify 3. Relying on this assertion, the Debtor had apparently submitted *no* documents

to Webster, but had instead responded to each of the 45 document requests by stating:

> Objection. As framed, the Request is facially overly broad and thus not reasonably calculated to lead to the discovery of admissible evidence.

> Specifically, the Request is not limited in time and scope and given the broad and open-ended terms "any and all" and "tend to evidence", the Alleged Debtor cannot be reasonably expected to respond without having to engage in a form of mental gymnastics to determine which documents would in fact be responsive, thereby causing the Alleged Debtor undue burden and expense.

Mot. to Strike Debtor's Resp., Feb. 16, 2011, Main Case ECF No. 54.

Not surprisingly, on that same day, Webster filed a motion asking the Court to strike the Debtor's responses as not in compliance with the Amended Discovery Order (the "Motion to Strike").  The Court agreed that the Debtor's responses to the document requests were without merit and took a similar view of the Motion to Clarify. Accordingly, on February 17, 2011, the Court granted Webster's Motion to Strike the Debtor's responses, denied the Debtor's request for clarification as without merit, and denied the request for a protective order.  See Order re: Motion to Strike, Feb. 17, 2011, Main Case ECF No. 57; Order re: Motion to Clarify, Feb. 17, 2011, Main Case ECF No. 58.  The Debtor appealed those orders, but the appeals were ultimately dismissed.  See Order of District Ct. Judge Casper Denying Mot. for Leave to Appeal & Dismissing Appeal, April 20, 2011, Main Case ECF No. 169.

On February 22, 2011, Webster filed a motion complaining that the Debtor still had not complied with the Court-ordered document production, again asking the Court to find that the Debtor was in contempt, this time of the Amended Discovery Order (the "Second Contempt Motion").  See Exp. Mot. for Contempt & for Entry of Order for Relief & Other Sanctions, Main Case ECF No. 61.  In the Second Contempt Motion, Webster

requested, *inter alia*, that the Court enter an order for relief as a sanction for the Debtor's contempt.

On that same day, the Debtor filed several documents: (1) a "Suggestion of Lack of Subjection Matter Jurisdiction," in which she asserted that the Court lacked jurisdiction because, despite her having more than 12 creditors, only one creditor had filed the petition, Main Case ECF No. 64; (2) a motion to dismiss the case (the "Motion to Dismiss"), relying on the same grounds, Main Case ECF No. 65; (3) a "Notice of Interlocutory Appeal" related to the Court's Order striking the Debtor's responses to the document production (the "Discovery Appeal"), Main Case ECF No. 66; and (4) a "Motion for Leave to Appeal," Main Case ECF No. 63.

The Court conducted a hearing on the Second Contempt Motion on February 28, 2011.  In explanation of her failure to produce any documents, the Debtor, while professing to take the Amended Discovery Order "very seriously," stated that the ambiguous language of the discovery request made it impossible for her to comply. She alleged to have been so overly-concerned with producing the wrong documentation that she concluded it was best to produce no documents at all.  The Court, however, found the Debtor's explanation to be insufficient.  Noting that the Court had reviewed each document request for clarity and relevance (and had made appropriate edits where necessary), and further noting that the Debtor had more than 40 days from the date of the Amended Discovery Order to gather the documentation or to seek further clarification, the Court found that the Debtor had simply failed and refused to comply. Furthermore, the Court noted, the Debtor's failure to produce the documentation had hampered Webster's ability to conduct an appropriate deposition relative to the defense

raised by the Debtor.

Accordingly, the Court found the Debtor in civil contempt of the Amended Discovery Order and, as forewarned in that order, the Court indicated that it would enter an order for relief as a sanction for the Debtor's noncompliance (the "First Contempt Order"). See Main Case ECF No. 73[4]; see also Order for Relief, Feb. 28, 2011, Main Case ECF No. 71 (the "Order for Relief"). The Court also entered orders striking the "Suggestion of Lack of Subjection Matter Jurisdiction" and denying the Motion to Dismiss (together with the First Contempt Order and the Order for Relief, the "February 2011 Orders"). Although the Debtor appealed each of the February 2011 Orders, those appeals were unsuccessful and ultimately dismissed.[5]

The Order for Relief having entered, the Court issued an order detailing the various schedules and statements required to be filed by the Debtor (the "Order to Update"). See Order to Update, Feb. 28, 2011, Main Case ECF No. 72. The Chapter 7

---

[4] Specifically, the Order read:

> FOR THE REASONS STATED IN OPEN COURT, THIS COURT FINDS AND RULES THAT THE ALLEGED DEBTOR IS IN CIVIL CONTEMPT OF THIS COURT'S ORDER OF JANUARY 11, 2011 BY VIRTUE OF HER FAILURE WITHOUT JUSTIFICATION TO PRODUCE AND DELIVER THE DOCUMENTS AS REQUIRED BY THE SAID ORDER; AND, AS SANCTION THEREFOR, THIS COURT WILL ENTER AN ORDER FOR RELIEF UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.

[5] The Debtor's appeals of the February 2011 Orders were each dismissed on April 1, 2011 for failure to pay the applicable filing fee. See Am. Orders Dismissing Appeals, Main Case ECF Nos. 128, 129, 130. The Debtor moved for reconsideration of the dismissals, which was denied. See Orders Denying Recons. of Dismissal of Appeals, April 5, 2011, Main Case ECF Nos. 145, 146, 147. The Debtor appealed the orders denying reconsideration, which appeals were consolidated and also eventually dismissed for failure to file the statement of issues and designation of the record. See Orders Dismissing Appeals, May 24, 2011, Main Case ECF No. 184. On June 7, 2011, the Debtor appealed the dismissal of the consolidated appeals, which appeal was also ultimately dismissed. See Electronic Order by District Ct. Judge Casper Dismissing Civil Action 11-40111, Aug. 6, 2012.

Trustee was appointed, and the meeting of creditors under § 341 of the Code (the "341 Meeting") was scheduled for April 4, 2011. <u>See</u> Notice of Ch. 7 Bankr. Case, Meeting of Creditors, & Deadlines, Feb. 28, 2011, Main Case ECF No. 76.

When the Debtor failed to file any of the documents required under the Order to Update and also failed to appear at the scheduled 341 Meeting, the Trustee filed a motion seeking an order compelling the Debtor to file the required schedules and statements and to attend the 341 Meeting (the "Motion to Compel"). <u>See</u> Trustee's Motion to Compel, April 5, 2011, Main Case ECF No. 135. The Court scheduled a hearing on the Motion to Compel for April 26, 2011 and ordered the Debtor to appear. <u>See</u> Order dated April 5, 2011, Main Case ECF No. 142. But the Debtor failed to appear at that hearing, and the Court entered an order granting the Trustee's Motion to Compel, obligating the Debtor to file all outstanding documents within 7 days and to attend the continued 341 Meeting on May 2, 2011 (the "April 26 Order"). <u>See</u> April 26 Order, Main Case ECF No. 170.

The Debtor failed yet again to file any of the required schedules and statements or to attend the 341 Meeting. Accordingly, the Trustee filed a motion for contempt, <u>see</u> Trustee's Mot. for Contempt, May 6, 2011, Main Case ECF No. 176, which the Court scheduled for hearing on June 21, 2011. Again, the Debtor failed to appear at the hearing. The Debtor having been completely nonresponsive, the Court entered an order finding the Debtor in contempt of the April 26 Order (the "Second Contempt Order"). <u>See</u> Second Contempt Order, June 24, 2011, Main Case ECF No. 201. The Second Contempt Order required the Debtor to file the outstanding schedules and statements indicated in the Order to Update, to attend a 341 Meeting, and to appear

before the Court on July 12, 2011 to show cause why she should not be sanctioned in

the amount of $855 (the Trustee's asserted cost to the estate on account of the Debtor's

recalcitrant behavior).   The order also indicated that, should the Debtor still not have

complied with the documentary requirements or failed to attend the 341 Meeting, she

would be required to show cause at the July 12 hearing as to why she should not be

monetarily sanctioned or incarcerated until she fully complied.

On July 8, 2011, the Debtor filed a notice of appeal of the Second Contempt

Order.   And, approximately one and a half hours prior to the July 12 hearing, the Debtor

filed an expedited motion seeking a stay of the Second Contempt Order (the "Motion for

Stay") on grounds that the Order for Relief, First Contempt Order, and Second

Contempt Order were on appeal.   See Debtor's Motion for Stay, July 12, 2011, Main

Case ECF No. 211.   The Debtor argued that, inasmuch as the District Court would be

reviewing "the viability of [the February 2011 Orders]," Motion for Stay 3, any further

action with regard to the Second Contempt Order should await a ruling from the District

Court on the propriety of the underlying February 2011 Orders.[6]

With regard to the Debtor's Motion for Stay, the Court ruled that a stay was not

warranted, as "the appeal(s) before the district court are meritless and frivolous."   Order

re: Motion for Stay, July 12, 2011, Main Case ECF No. 212.   And on July 13, the Court

entered an order finding that the Debtor was still not in compliance with its orders and

ordering her to "surrender herself to the United States Marshal for the District of

Massachusetts, or any of his deputies, at 10:00 a.m. on July 15, 2011 . . . for

incarceration until such time as she shall have purged herself of contempt."   Order in

_____

[6] Actually, the February 2011 Orders were no longer on appeal.   What remained was the
Debtor's appeal of the dismissal of the consolidated appeals of this Court's orders denying
reconsideration of its earlier orders dismissing the appeals.   See, supra, fn. 5.

Furtherance of [Second Contempt Order], July 13, 2011, Main Case ECF No. 213.

The Debtor, now appearing to have been enlightened as to the gravity of the situation, partially complied with the Order to Update on July 15 by filing most of the required documents.  The Court scheduled a status conference for September 6, 2011 to assess whether the Debtor had filed the remaining documents and attended the 341 Meeting.  See Order in Furtherance of July 13, 2011 Order, July 15, 2011, ECF No. 218.  The Debtor eventually filed the two remaining documents, although not until September 6, nearly 2 months after being admonished to do so and on the very day of the hearing set to determine her compliance.

Meanwhile, on July 6, 2011 – just two days before the Debtor filed the Motion for Stay and despite her insistence in that motion that the District Court was reviewing the propriety of the February 2011 Orders – the Debtor filed the instant Adversary Proceeding asking the Court to vacate its February 2011 Orders.  See "Verified Compl. for Issuance of Orders Vacating the Feb. 28, 2011 Order Holding the Alleged Debtor in Contempt Nunc Pro Tunc & for Issuance of Order Vacating the Feb. 28, 2011 Order for Relief Nunc Pro Tunc," AP 11-04083 ECF No. 1 (the "Complaint").

The Complaint names Webster, the Chapter 7 Trustee, and Richard King, Assistant United States Trustee for the District of Massachusetts ("as the legal representative of the United States Trustee") as defendants (together, the "Defendants").  In the Complaint, the Debtor maintains that the Order for Relief and First Contempt Order should be vacated because (1) Webster filed the case "for an improper and/or unlawful purpose;" (2) the First Contempt Order was imposed as a criminal, and not civil, sanction; (3) the ensuing Order for Relief was entered without statutory

authority; and (4) the Debtor was not afforded constitutional protections (such as trial by jury before an Article III court) prior to being criminally sanctioned.

In response, each of the named Defendants filed a motion to dismiss the Adversary Proceeding. See U.S. Trustee's Mot. to Dismiss, Nov. 23, 2011, AP ECF No. 7; Webster's Mot. to Dismiss, Dec. 6, 2011, AP ECF No. 16; Ch. 7 Trustee's Mot. to Dismiss, Jan. 12, 2012, ECF No. 31 (together, the "Motions to Dismiss"). The U.S. Trustee's Motion to Dismiss was premised on three grounds: (i) the action was untimely, if viewed as a motion to reconsider the February 2011 Orders; (ii) the February 2011 Orders remained on appeal; and (iii) there was no relief sought in the Complaint against the U.S. Trustee. Essentially, the U.S. Trustee said, the Adversary Proceeding was merely an attempt to collaterally attack and circumvent the Court's earlier orders in a method not supported by applicable law.

In their Motions to Dismiss, the Chapter 7 Trustee and Webster also argued that the Complaint was "a thinly disguised attempt to appeal various matters which are presently on appeal." Webster's Mot. to Dismiss 2; see also Ch. 7 Trustee's Mot. to Dismiss 1 ("The complaint appears . . . to be an attempt to appeal one or more orders of this Court entered in February 2011."). The Chapter 7 Trustee raised the additional argument that the Debtor had not sought the required leave to file suit against the Trustee, citing to Muratore v. Darr, 375 F.3d 140 (1st Cir. 2004). Webster and the Chapter 7 Trustee also filed their Motions for Sanctions, requesting the imposition of sanctions for the Debtor's alleged violation of Bankruptcy Rule 9011 in filing the Complaint. See, Webster's Mot. for Sanctions, Dec. 6, 2011, AP ECF No. 17; Ch. 7 Trustee's Mot. for Sanctions, Jan. 12, 2012, AP ECF No. 32.

In the Main Case, Webster had been granted relief from the automatic stay to proceed with a foreclosure sale of the Debtor's residence. <u>See</u> Order Granting Mot. for Relief from Automatic Stay; Nov. 10, 2011, Main Case ECF No. 242. One day prior to Webster's scheduled foreclosure sale, while the Chapter 7 case and the Adversary Proceeding remained open, the Debtor commenced a new bankruptcy case by filing a petition under Chapter 13. <u>See</u> Ch. 13 Voluntary Petition, Dec. 28, 2011, Ch. 13 Case No. 11-45286, ECF No. 1 (the "Chapter 13 Case"). Webster responded by immediately filing a motion to dismiss the Chapter 13 Case (the "Motion to Dismiss Chapter 13 Case"). <u>See</u> Emergency Mot. to Dismiss Ch. 13 Case, Dec. 28, 2011, Ch. 13 ECF No. 5.

A hearing on the Motions to Dismiss the Adversary Proceeding and the Motion to Dismiss Chapter 13 Case was scheduled for January 10, 2012. However, on that day, Israel M. Sanchez, Jr. ("Attorney Sanchez") filed a "Notice of Appearance and Request for Notice" as counsel to the Debtor in both the Adversary Proceeding and the Chapter 13 Case, and the hearing was continued to January 26, 2012 (the "Dismissal Hearing").

Attorney Sanchez filed oppositions to the Chapter 7 Trustee's Motion to Dismiss and Motion for Sanctions (the "Oppositions")[7] and appeared on the Debtor's behalf at the Dismissal Hearing. In her Oppositions, the Debtor asserted that the filing of the Adversary Proceeding was procedurally proper, because it sought relief "by way of an ***independent*** action under Fed. R. Bankr. P. 9024 (as incorporating Fed. R. Bankr. P. [sic] 60)." Opp. to Ch. 7 Trustee's Mot. to Dismiss 2, Jan. 25, 2012, AP ECF No. 40

---

[7] At the Dismissal Hearing, Attorney Sanchez claimed to have prepared, but had difficulties filing, oppositions to Webster's motions and the U.S. Trustee's Motion to Dismiss. At oral argument, however, it appeared that he relied on the same grounds stated in the Oppositions in opposing the remaining matters.

(emphasis in original); see also Opp. to Ch. 7 Trustee's Mot. for Sanctions 2, Jan. 25,

2012, ECF No. 41.   As to the merits of the Complaint, the Debtor maintained that the

Court had no jurisdiction over the Main Case because the involuntary petition was filed

by Webster for an improper purpose and because the Debtor was ineligible to be a

Chapter 7 debtor "as a matter of law," given the calculations submitted on her means

test (Official Form 22A).

With regard to the requests for sanctions under Rule 9011, the Debtor opposed

on identical grounds, maintaining that the Adversary Proceeding was both procedurally

proper and substantively sound.   In addition, she claimed that the Chapter 7 Trustee

had failed to comply with the "safe harbor" provision of Bankruptcy Rule 9011(c)(1)(A),

because he did not apprise the Debtor of the specific conduct he alleged violated Rule

9011.[8]   See Opp. to Ch. 7 Trustee's Mot. for Sanctions 2-3.

At the Dismissal Hearing, Attorney Sanchez first attempted to resolve all of the

outstanding motions by making an "oral motion" that the Main Case be dismissed,

arguing that the Debtor was "ineligible" to be a Debtor under Chapter 7 due to the

calculations on the Debtor's Official Form 22A.   He argued that if the Main Case were

dismissed, then the Motions to Dismiss (as well as the outstanding appeals) would

---

[8] Prior to filing his Motion to Dismiss and Motion for Sanctions, the Trustee sent a letter to the Debtor demanding dismissal of the Complaint (the "Trustee's Demand Letter").   See Trustee's Mot. for Sanctions, Ex. A.  According to the Trustee, the Debtor never responded to his Demand Letter.   The Debtor says that she did not respond to the Trustee's Demand Letter because it allegedly failed to comply with the "safe harbor" provisions of Rule 9011.

Attorney Aframe also sent a letter to the Debtor on behalf of Webster, demanding that the Debtor withdraw the Complaint ("Webster's Demand Letter").   The Debtor responded to Webster's Demand Letter on December 4, 2011, expressing her refusal to withdraw the Complaint and explaining that she filed the Complaint with the explicit purpose of seeking independent relief from the February 2011 Orders.   See Supp. to Webster's Mot. for Sanctions, Ex. B, Dec. 6, 2011, AP ECF No. 18.

essentially be moot.

When pressed to respond to the merits of the Motions to Dismiss, Attorney Sanchez relied on the argument raised in the Oppositions that Bankruptcy Rule 9024, by incorporating Federal Rule 60, allowed reconsideration of an order through an independent action.   When asked for textual support of this argument, Attorney Sanchez was unable to do so and he chose to withdraw that defense.   He then repeated his assertion that the Main Case should be dismissed because the Debtor was ineligible for Chapter 7 relief.   The Court explained, however, that the means test calculation does not render a debtor "ineligible" for Chapter 7 relief, but creates a presumption in support of dismissal upon motion filed by the U.S. Trustee or the Court.

At that point in the hearing, Attorney Sanchez chose instead to withdraw the Debtor's Oppositions to the Motions to Dismiss and consented to the dismissal of the Adversary Proceeding as to all of the Defendants.   Notably, Attorney Sanchez did not concede the merits of the Motions to Dismiss.   Rather, he stated that the Oppositions were withdrawn in an attempt to "simplify" matters.

As to the Motions for Sanctions, Attorney Sanchez argued again that the filing of the Adversary Proceeding was supported by both the Bankruptcy and Federal Rules and that the Complaint had been filed in good faith.   Because the Debtor's intentions with regard to the filing of the Adversary Proceeding were at issue, the Court continued the matter to August 24, 2012 for an evidentiary hearing (the "Evidentiary Hearing"). The Court noted that both Webster and the Trustee would have an opportunity at that hearing to present evidence with regard to the fees and costs expended in connection with the Adversary Proceeding, further cautioning that if the Debtor was unable to

successfully defend the Motions for Sanctions, additional fees and costs would accrue.[9]
The Court also continued the Motion to Dismiss Chapter 13 Case.

Despite the Debtor's assertion that she had filed the Chapter 13 case for rehabilitative purposes, it was reported at the continued hearing on the Motion to Dismiss Chapter 13 Case that both Attorney Sanchez and the Debtor had failed to attend the scheduled 341 meeting in the Chapter 13 case. At the conclusion of the hearing, the Court found that the Debtor had obstructed the administration of both the Chapter 7 and Chapter 13 cases. The Court also found that the Chapter 13 petition had not been filed in good faith, but as part of a continuing scheme to delay, hinder, and defraud creditors. Accordingly, the Court ruled there were no circumstances under which the Court could confirm a plan, confirmation requiring a finding that the case had been filed in good faith. See 11 U.S.C. § 1325(a)(7). The Court *sua sponte* granted relief from the automatic stay pursuant to § 362(d)(4) to enable Webster to proceed with the auction without any further interference.[10] And, owing to the Debtor's failure to attend the 341 meeting, the Court dismissed the Chapter 13 Case pursuant to § 109(g).[11] See Order Re: Motion to Dismiss Chapter 13 Case, Feb. 21, 2012, Ch. 13

---

[9] At the hearing, counsel for the Trustee estimated that approximately $1,000 in fees had been incurred in defending against the Adversary Proceeding, not including the time spent for the Dismissal Hearing or any further work that would be required.

[10] Relief from the automatic stay regarding real property may be entered under subsection (d)(4)(B) "if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property." 11 U.S.C. 362(d)(4)(B). An order entered under this subsection, if properly recorded pursuant to state law, is binding in any subsequent case filed by the debtor within 2 years. See 11 U.S.C. § 362(d)(4).

[11] Specifically, the Court considered its dismissal under § 109(g) as pursuant to subsection (1), which applies to a dismissal "for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." 11 U.S.C. § 109(g)(1). Dismissal

ECF No. 70.

The Debtor failed to appear and testify at the Evidentiary Hearing on the Motions for Sanctions held on August 24, 2012.[12]   At the hearing, the Trustee testified that he sent his Demand Letter to the Debtor in November 2011 asking the Debtor to withdraw or dismiss the Complaint and appended to that letter copies of his Motion to Dismiss and Motion for Sanctions.   He further testified that he expended approximately 8 hours of time in connection with the Adversary Proceeding at an hourly rate of $285.   He testified that his associate had spent approximately 4 hours on the case at an hourly rate of $175.   Therefore, the fees incurred by the Trustee in connection with the Adversary Proceeding total $2,980.

Attorney Aframe testified that he sent Webster's Demand Letter to the Debtor in November 2011, to which he attached his Motions for Sanctions, indicating that the Motion for Sanctions would be filed unless the Adversary Proceeding was dismissed or withdrawn.   He testified that he received a response from the Debtor in December 2011 stating that she would not dismiss the Complaint.   After agreeing to some voluntary reductions, Attorney Aframe testified that Webster incurred total fees and costs in the amount of $3,185.56 in connection with the Adversary Proceeding.   At the conclusion of the Evidentiary Hearing, the Court took the matter under advisement.

---

under that section renders an individual ineligible to file another bankruptcy case for a period of 180 days.  See 11 U.S.C. § 109(g).

[12] The Debtor now says that she did not appear at the hearing on the Motions for Sanctions because she was not called to testify by any party.  See Debtor's Post-Hr'g Brief, Sept. 14, 2011, AP ECF Nos. 76, 77, 78.

II.    <u>POSITIONS OF THE PARTIES</u>

Both the Trustee and Webster argue that the Complaint was filed as a collateral attack on the Court's February 2011 Orders, which orders they believed remained on appeal, in an attempt to further harass the parties involved, cause an unnecessary delay in the Chapter 7 proceedings, and to increase the costs of litigation.  And both the Trustee and Webster further maintain that the claims set forth in the Complaint were frivolous and not supported by existing law.  The Trustee additionally argues that case law is clear in that a suit against the Trustee should not have been filed without first seeking leave of Court.  Accordingly, both Webster and the Trustee posit that the filing of the Complaint violated Bankruptcy Rule 9011.

The Debtor admits that in filing the Complaint she sought independent relief from the February 2011 Orders (which she says is permissible under Federal Rule 60(d)(1), as incorporated by Bankruptcy Rule 9024), and she concedes that it "could very well be that the requisite procedure was not followed."  Debtor's Post-Hr'g Brief 7.  But she maintains that she did not bring the Adversary Proceeding in bad faith, and argues further that the filing was not frivolous because it was made in a "desperate attempt to protect her home."  <u>Id.</u> at 6.  As to the Trustee, the Debtor explains that he was added as a defendant because the declaratory relief sought in the Complaint would affect his standing to continue in his fiduciary capacity vis-à-vis the bankruptcy estate.

During oral argument at the Evidentiary Hearing, Attorney Sanchez also argued that, even if the filing of the Complaint violated Rule 9011, the Debtor had already been "punished" by losing her home.  However, on further questioning, he conceded that Webster had not yet successfully foreclosed on the property and the Debtor continued

to reside there rent-free.  In her post-hearing brief, the Debtor argues that the dismissal

of the Chapter 13 case was a "sufficient sanction given the equities."  Id. at 4.  She also

characterizes the allegation that the Debtor "has delayed and hindered" creditors as

"ironic," because Webster has been unable to successfully foreclose on the property.

Id. at 9.

Finally, the Debtor argues that the fees and costs testified to by the Trustee and

Webster should not be credited.  Id. at 11.[13]  As to Webster's testimony regarding fees

and costs, the Debtor emphasizes the errors identified by Webster (and corrected

during the Evidentiary Hearing).  For both the Trustee's and Webster's asserted legal

fees, then, the Debtor asks the Court to use its discretion to "eliminate all claimed fees

as lacking credible foundation or at least further reduce the amount claimed."  Id.

III.    DISCUSSION

Bankruptcy Rule 9011(b) provides that an attorney or *pro se* party who presents

to the court, "whether by signing, filing, submitting, or later advocating[ ] a petition,

pleading, written motion, or other paper," certifies, *inter alia*, that:

> (1) it is not being presented for any improper purpose, such as to harass
> or to cause unnecessary delay or needless increase in the cost of
> litigation; [and]
> . . .

---

[13] In a footnote to her post-hearing brief, the Debtor says that Trustee's counsel stated at an earlier hearing, conducted while she was still *pro se*, that he would be seeking about $1,000 in fees and costs.  See Debtor's Post-Hr'g Brief 11 n.5.  Actually, the $1,000 figure was represented by Trustee's counsel at the Dismissal Hearing (a hearing at which Attorney Sanchez appeared on the Debtor's behalf) to be the amount of fees incurred to that point in the Adversary Proceeding *not* including any fees incurred in connection with the Dismissal Hearing or the Evidentiary Hearing.  And, in fact, it was at that very hearing that the Court forewarned Attorney Sanchez as to the increased fees and costs that would be incurred by the necessity of conducting the Evidentiary Hearing.

> (2) the claims, defenses, and other legal contentions therein are warranted
> by existing law or by a nonfrivolous argument for the extension,
> modification, or reversal of existing law or the establishment of new law
> . . . .

Fed. R. Bankr. P. 9011(b)(1), (2).  "The purpose of Rule 11 is to deter abusive litigation tactics and streamline the litigation process by lessening frivolous claims."  White v. Burdick (In re CK Liquidation Corp.), 321 B.R. 355, 362 (B.A.P. 1st Cir. 2005). [14]  And, pursuant to Bankruptcy Rule 9011(c), a violation of subsection (b) may warrant the imposition of "an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."  Fed. R. Bankr. P. 9011(c).

A.   Compliance with the "Safe Harbor" Provision of Bankruptcy Rule 9011(c)

Before sanctions may be awarded upon a party-initiated motion for sanctions under Rule 9011(b)(1), the moving party must first afford "21 days advance notice and an opportunity to withdraw or correct the allegedly offending allegation."  In re Claudio, 463 B.R. 190, 196 (Bankr. D. Mass. 2012); see Fed. R. Bankr. P. 9011(c)(1)(A).[15]

---

[14] "Because Rule 9011 is derived from Federal Rule of Civil Procedure 11, the First Circuit has explained that 'Rule 11 jurisprudence is largely transferable to Rule 9011 cases.'"  CK Liquidation, 321 B.R. at 362 (quoting Featherston v. Goldman (In re D.C. Sullivan Co.), 843 F.2d 596, 598 (1st Cir. 1988)).

[15] Specifically, the rule provides:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  It shall be served as provided in Rule 7004.  The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected . . . .

Fed. R. Bankr. P. 9011(c)(1)(A).  The "separate pleading" requirement has been satisfied here, as both Motions for Sanctions were filed separately from the Motions to Dismiss.  Furthermore, both the Trustee and Attorney Aframe testified that notice of the Motions for Sanctions was provided to the Debtor at least 21 days before the motions were filed.

Here, the Debtor acknowledges that she received advance notice from both Attorney Aframe and the Trustee, but complains that the notice sent by the Trustee failed to adequately "describe the specific conduct alleged to violate subdivision (b)," as required by subsection (c).  While the motion attached to the Trustee's Demand Letter is not identical to the Motion for Sanctions the Trustee ultimately filed,[16] it does describe the infirmities of the Complaint – namely, that no leave of Court was sought prior to the filing and that the Complaint appears instead to be an attempt to appeal prior Court orders, already the subject of appellate review.  These reasons, though succinctly stated, were sufficient to apprise the Debtor of the Trustee's grounds for believing the filing of the Complaint violated Bankruptcy Rule 9011 and his grounds for seeking remuneration for defending against the Complaint unless voluntarily dismissed.

The Debtor has not otherwise argued that the Trustee's or Webster's Demand Letters were insufficient under the safe harbor provision.  Accordingly, the Court finds that Webster and the Trustee complied with the requirements of Bankruptcy Rule 9011(c)(1)(A) prior to filing the Motions for Sanctions.

B.    The Debtor's Sanctionable Behavior under Bankruptcy Rule 9011(b)

Both Webster and the Trustee maintain that the Debtor violated subsection (b) by filing the Complaint, because the collateral attack on the Court's February 2011 Orders through an adversary proceeding was a procedure not warranted by existing law or by a nonfrivolous argument for the extension of existing law.  The Debtor justifies the filing of the Complaint by looking to Rule 60(d)(1) (as incorporated by Bankruptcy Rule 9024), which states that a court retains the power to "entertain an independent action to relieve

---

[16] The motion attached to the Trustee's Demand Letter was a combined motion to dismiss and request for sanctions, which, if filed in that form, would not have complied with the "separate pleading" requirement.

a party from a judgment, order, or proceeding."  Fed. R. Civ. P. 60(d)(1).

"A legal argument is not warranted by existing law if it is based on legal theories that are plainly foreclosed by well-established principles and authoritative precedent." CK Liquidation, 321 B.R. at 362 (citing In re Willis Furniture Co., 148 B.R. 691, 694 (Bankr. D. Mass. 1992); Dibbs v. Gonsalves, 921 F. Supp. 44, 47-49 (D.P.R. 1996); Aetna Casualty & Surety Co. v. Kellogg, 856 F.Supp. 25, 32-33 (D. N.H. 1994); 10 Lawrence P. King, Collier on Bankruptcy, ¶ 9011.04[7][a] (15th ed. rev. 2004)).  While Rule 60(d)(1) does contemplate that, in some circumstances, an "independent action" may be appropriate, such an action is "neither a substitute for appeal nor a conduit through which to channel a collateral attack upon a judgment of a court of competent jurisdiction."  Consol. Gas & Equip. Co. of Am. v. Carver, 257 F.2d 111, 114 (10th Cir. 1958).  Instead, as the Supreme Court has held, such "independent actions should be available only to prevent a grave miscarriage of justice."  U.S. v. Beggerly, 524 U.S. 38, 48 (1998).

The Debtor has acknowledged that the purpose of the Adversary Proceeding was solely to revisit the February 2011 Orders.  However, this collateral attack was unjustified and inappropriate.  Apart from simply quoting the language of Rule 60(d)(1), the Debtor has articulated no reason why the filing of an independent action was necessary to "prevent a grave miscarriage of justice."  The Debtor availed herself of the opportunity to appeal the February 2011 Orders, and the filing of the Complaint could not be used to circumvent her failure to appropriately prosecute those appeals. Accordingly, the Court finds that the Debtor violated subsection (b)(2) in filing the Complaint, as her asserted purpose in commencing the Adversary Proceeding as a

collateral attack on the Court's earlier (and previously appealed) orders belies any argument that the filing was not frivolous under the language of Rule 60(d)(1).[17]

The question of sanctions on account of the (b)(2) violation, however, is more complicated.  While the Debtor was acting *pro se* at the time the Complaint was filed, she later retained Attorney Sanchez, who then drafted the Oppositions and appeared on the Debtor's behalf at multiple hearings.   Under Rule 9011(c)(2)(A), "[m]onetary sanctions may not be awarded against a *represented party* for a violation of subdivision (b)(2)."  Fed. R. Bankr. P. 9011(c)(2)(A) (emphasis supplied).   Therefore, an award of sanctions against the Debtor would presumably have to be parsed between the Debtor's activities and those of Attorney Sanchez.   Fortunately, however, the Court need not engage in such a labyrinthine analysis, because whatever her responsibility for the violation of (b)(2), her conduct falls squarely within the proscription of (b)(1).

---

[17] And to the extent that the February 2011 Orders remained involved in the appellate process (as the Debtor argued in her Motion for Stay filed in the Main Case on July 8,  just two days after this Adversary Proceeding was commenced) there would be even less legal justification for the filing of the Complaint.  If the orders were on appeal, the Court would have no jurisdiction to entertain the relief requested in the Complaint:

> The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam). "The rule is well established that the taking of an appeal transfers jurisdiction from the Bankruptcy Court to the Appellate Court with regard to matters involved in the appeal and divest the Bankruptcy Court of jurisdiction to proceed further with such matters." In re Kendrick Equipment Corporation, 60 B.R. 356, 358 (Bankr.W.D.Va.1986) (citations omitted). "This is so because a bankruptcy judge does not have concurrent jurisdiction with the district court [or BAP] over the subject matter of an appeal ... Once a notice of appeal is filed 'no lower court should be able to vacate or even modify an order under appeal, not even a bankruptcy court attempting to eliminate the need for a particular appeal.'... The rationale for this rule is the avoidance of confusion and waste of time that might result from putting the same issues before two courts at the same time." In re Emergency Beacon Corporation, 58 B.R. 399, 402 (S.D.N.Y.1986).

In re Crane Rental Co., Inc., 2006 WL 771716, *1 (Bankr. D. Mass. March 27, 2006).

Regardless of the Debtor's asserted legal justifications for filing the Complaint, her ultimate purpose in commencing the Adversary Proceeding was to avoid the consequences of her ongoing contumacious behavior and to delay the proceedings in the Main Case.  See Troost v. Kitchin (In re Kitchin), 327 B.R. 337, 366 (Bankr. N.D. Ill. 2005) ("A paper interposed for any improper purpose is sanctionable whether or not it is supported by the facts and the law . . . .").

Subdivision (b)(1) of Bankruptcy Rule 9011 "is directed at abusive litigation practices and encompasses papers filed to cause unnecessary delay, to increase litigation costs, or filed to harass."  In re Raymond Prof'l Grp., Inc., 420 B.R. 448, 461 (Bankr. N.D. Ill. 2009) (citing Kitchin, 327 B.R. at 366).   While there is no precise formula or checklist to determine whether a pleading was presented for an improper purpose,

> [c]ourts generally apply an objective standard . . . .  Courts may infer the purpose of a filing from the consequences of the motion, such as delaying the proceedings or creating a persistent pattern of clearly abusive litigation.

CK Liquidation, 321 B.R. at 365 (citations omitted).  In determining whether to impose sanctions or what type of sanctions to impose, the Court may consider:

> whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; [and] whether the responsible person is trained in the law . . . .

Id. at 362 (quoting Dibbs, 921 F. Supp. at 55; Advisory Comm. Notes to Fed. R. Civ. P. 11).

Here, the Debtor's intractable behavior has tried the patience of the parties and

the Court from the outset.   Her refusal to comply with Court orders resulted in two

findings of contempt in the Main Case.   She never complied with the Amended

Discovery Order.   Her piecemeal compliance with the Order to Update was completed

only on the doorstep of incarceration.   She filed a contemporaneous Chapter 13 Case in

an effort to hinder and delay Webster's recovery, which case was ultimately dismissed

for her failure to appear at the 341 meeting (despite her vociferous claims at the

Dismissal Hearing that she had filed the Chapter 13 Case to set matters aright).

This Adversary Proceeding was filed after her appeals of the February 2011

Orders had all been dismissed, shortly after the Court had issued the Second Contempt

Order, and less than a week before the Debtor was ordered to appear and show cause

why she should not be monetarily sanctioned or incarcerated until she fully complied.

And only two days later she was seeking yet another stay of the proceedings in the

Main Case on grounds that the February 2011 Orders were under review.   Even were

the Court to countenance the Debtor's asseveration that she was acting "desperately"

when she filed the Complaint, such desperation did not provide her with a license to

continually vex and harass adverse parties and the Court by filing frivolous actions.

Bankruptcy Rule 9011 "does not exclude *pro se* plaintiffs from possible sanction"

and a court "may impose sanctions on an unrepresented party if he or she submits a

pleading for an improper purpose."   Azubuko v. MBNA America Bank, 396 F. Supp. 2d

1, 7 (D. Mass. 2005); see also Hoover v. Gershman Inv. Corp., 774 F. Supp. 60, 64-65

(D. Mass. 1991) (courts and Rule 11 itself indicate that [the] Rule applies to represented

and *pro se* parties alike) (citing LeFebvre v. Comm'r, 830 F.2d 417, 420 (1st Cir. 1987)).

While the Debtor was acting *pro se* when she filed the Complaint, her legal writings in

the Main Case and in this Adversary Proceeding demonstrate an unusual sophistication

in comparison to those filed by the usual lay person.[18]  For instance, her responses (by

way of objection) to Webster's document requests demonstrate that she is well-versed

in legal concepts and drafting and, though the Court found them substantively frivolous,

they demonstrate a cultivated calculation in her efforts to delay proceedings and avoid

compliance with Court orders.  The Court has no doubt that the Complaint was filed for

the improper purpose of creating further obfuscation and delay.  See Hoover, 774 F.

Supp. at 65 (filing of complaint to relitigate or delay actions already decided or pending

in another court was an improper purpose and violated subsection (b)(1)).

Even if the Debtor believed the filing of the Complaint was *procedurally* sound, it

is clear that she was seeking yet another way to further delay the administration of the

Main Case and to harass both Webster and the Trustee.  Hostage to the Debtor's

antics, Webster and the Trustee have been required to expend time and resources in

defending against the Complaint.  Accordingly, the Court rules that the Debtor, in filing

the Complaint and commencing the Adversary Proceeding, violated Bankruptcy Rule

9011(b)(1), and concludes that sanctions for that filing are warranted.

C.    The Sanction Award

"Once a court determines that a person has violated Bankruptcy Rule 9011(b), it

may impose an 'appropriate sanction.'"  In re Kristan, 395 B.R. 500, 510 (B.A.P. 1st Cir.

2008); see also In re Shields, slip copy, 2012 WL 2366718, *2 (D. Mass. June 21,

2012).    Sanctions serve the dual purpose of deterrence and compensation and

(particularly in the context of (b)(1) violations) "reasonable attorneys' fees and expenses

---

[18] In fact, the Debtor indicates in her Schedule I that she is employed as a real estate title
examiner. See Debtor's Schedules & Statements, July 15, 2011, Main Case ECF No. 216.

incurred as a result of the sanctionable conduct may appropriately form the basis of a Bankruptcy Rule 9011 sanction." Kristan, 395 B.R. at 510; see also CK Liquidation, 321 B.R. at 366; Fed. R. Civ. P. 11, Advisory Comm. Notes ("particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation").  The Court rules that a monetary sanction is appropriate to deter the Debtor from any future frivolous filings made solely to delay court proceedings and avoid compliance with court orders.  And the Court finds that the appropriate sanction in this case is "an order directing payment to the movant[s] of . . . the reasonable attorneys' fees and other expenses incurred as a direct result of the [Debtor's] violation."  Fed. R. Bankr. P. 9011(c)(2).[19]

The Court finds that the testimony given by Attorney Aframe and the Trustee regarding the fees incurred in connection with this Adversary Proceeding was credible, especially in light of their readiness to make corrections to calculations where errors were identified.  Both their hourly rates and the total number of hours spent on this matter were reasonable and the Court sees no justification for further reducing the amounts requested.

IV.    CONCLUSION

For the foregoing reasons, the Court finds and rules that the Debtor violated

---

[19] The Debtor's exhortations that she has been "punished enough" through the impending foreclosure of her residence and the dismissal of the Chapter 13 Case are unpersuasive.  Each of those events either did occur or will occur solely as a consequence of the Debtor's actions independent of the filing of this Adversary Proceeding, and neither constitutes any sort of "sanction" in the context of the present matters before the Court.

Bankruptcy Rule 9011(b)(1) and (2) in filing the Complaint and initiating this Adversary Proceeding.  The Court will grant the Motions for Sanctions and will assess sanctions against the Debtor on account of her violation of Bankruptcy Rule 9011(b)(1), which sanctions shall be in the amount of $2,890 to be paid to the Trustee and in the amount of $3,185.56 to be paid to Attorney Aframe on behalf of Webster.  Orders in conformity with this memorandum shall issue forthwith.


DATED: February 21, 2013                    By the Court,

                                            _____
                                            Henry J. Boroff
                                            United States Bankruptcy Judge